NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                  :
NINA RUIZ,                        :
                                  :
              Plaintiff,          :          Hon. Dennis M. Cavanaugh
                                  :
      v.                          :          **OPINION**
                                  :
                                  :          Civil Action No: 08-6388
COMMISSIONER OF SOCIAL            :
SECURITY,                         :
                                  :
              Defendant.          :
_____:

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the appeal of Nina Ruiz ("Plaintiff") from the final decision of the Commissioner of Social Security ("Commissioner"), denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, this matter is remanded for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on August 21, 2003. See Administrative Transcript ("Tr."), at 16. Plaintiff alleged disability as of November 11, 2001, citing Hepatitis C, irritable bowel syndrome, depression, migraines, back/neck/joint pains, memory loss, and an

inability to concentrate. Id. at 111. Both of Plaintiff's claims were denied, first at the initial hearing on March 31, 2004, and then at reconsideration on December 17, 2004. Id. at 16. Plaintiff subsequently filed a timely appeal to an Administrative Law Judge ("ALJ").

ALJ Ralph J. Muehlig held a hearing on May 15, 2006. Id. at 28. ALJ Muehlig retired following this hearing, however, and the matter was transferred to ALJ Dennis O'Leary. Id. at 16. ALJ O'Leary ruled partially in favor of Plaintiff, finding that she was disabled as of March 15, 2006. Id. at 31. Accordingly, the ALJ denied Plaintiff's DIB pursuant to Title II of the Social Security Act from November 11, 2001 to September 30, 2003, and further found that Plaintiff was ineligible for SSI from September 30, 2003 to March 14, 2006. Id. at 30-31. The Appeals Council denied Plaintiff's request for review on October 31, 2008.

On December 30, 2008, Plaintiff filed a timely complaint with this Court seeking judicial review. Plaintiff argues that the Commissioner's decision was not supported by substantial evidence in the record. See Plaintiff's Brief ("Pl. Brief") at 13.[1] As such, Plaintiff seeks reversal of the ALJ's decision or alternatively requests a new hearing on remand. Id.

**B. FACTS**

1. *The Findings of the Administrative Law Judge*

ALJ O'Leary made the following eight (8) findings regarding the Plaintiff's application for DIB and SSI:  (1)  the claimant last met the insured status requirements of the Social Security Act on September 20, 2003;  (2)  the claimant has not engaged in substantial gainful activity since

---

[1] Plaintiff also contends that the record contains "substantial evidence" to establish that she was entitled to benefits. However, this Court reviews the ALJ's opinion to ensure that his determination was supported by substantial evidence—not to reassess *de novo* whether Plaintiff is entitled to benefits. See Section II, infra.

November 11, 2001, the alleged onset date;  (3) prior to March 15, 2006, when the claimant began interferon treatment for Hepatitis C, the claimant had the following medically determinable impairments: hepatitis C, low back pain, allergies, depression due to transgender issues, and a polysubstance abuse disorder—the ALJ determined, however, that this combination of impairments did not cause more than a minimal impact on the claimant's ability to perform basic work activities for 12 months and, therefore, the claimant did not have a severe impairment or combination of impairments;  (4) beginning on March 15, 2006, the claimant has had the following severe combination of impairments: schizoaffective disorder and Hepatitis C;  (5) beginning on March 15, 2006, the severity of the claimant's schizoaffective disorder has met the requirements of section(s) 12.03 of Appendix 1;  (6) the claimant was not disabled prior to March 15, 2006, but became disabled on that date and has continued to be disabled through the date of this [i.e., the ALJ's] decision;  (7) the claimant was not disabled within the meaning of the Social Security Act at any time through September 30, 2003, the date last insured;  (8) the claimant's substance use disorder(s) is not a contributing factor material to the determination of the disability.

2. *Plaintiff's Medical History*

The record indicates that Plaintiff has an exhaustive medical history, which this Court summarizes below.

On February 4, 2004, at the request of Disability Determination Services ("DDS"), Plaintiff underwent a psychiatric consultative exam by Dr. Jackie Farnese. Tr. at 21. Dr. Farnese diagnosed Plaintiff with bipolar II disorder and an adjustment disorder with anxiety that was deemed chronic. Id. at 22. She additionally found the Plaintiff had irritable bowel syndrome, Hepatitis C, and was transgender. Id.

Plaintiff was seen one day later by Dr. Celia Roque on February 5, 2004.  Id.  Dr. Roque diagnosed Plaintiff with psychological disorder comorbid with anxiety disorder, a mood disorder, substance use disorder, personality disorder; she also found that Plaintiff had a history of substance abuse, Hepatitis C, irritable bowel syndrome and chronic lower back pain.  Id. at 23. Although Dr. Roque found that Plaintiff had several  subjective emotional and physical symptoms, she found that Plaintiff appeared to have no physical functional limitations in performing activities of daily living, such as sitting, standing, walking, carrying, hearing, speaking, reading, writing and traveling.  Id.

Based on these two medical reports, the State Agency Medical and Psychological Consultants ("State Agency") determined the Plaintiff's physical impairments were not severe.  Id.  It further indicated that there was insufficient evidence to determine whether Plaintiff was eligible for DIB for the time she was insured, November 11, 2001 until September 30, 2003 and/or SSI from September 30, 2003 until March 14, 2006, the time she was uninsured.  Id.

Plaintiff subsequently submitted further medical records to the State Agency, detailing her past treatment at Raritan Bay Mental Health Center ("RBMHC") from August 9, 2001 to August 22, 2003.  Id.  The records indicated that doctors there treated Plaintiff for dysthymic disorder, opioid dependence, and methadone maintenance.  Id.  At the time, Plaintiff was given Lexapro 10 mg, Gabatril 4 mg, Valium 5 mg, and Restoril 30 mg.  Id.  When Plaintiff ceased treatment at RBMHC on August 22, 2003, doctors officially diagnosed her with a single episode of major depressive disorder that was severe but without psychotic feature, an anxiety disorder (NOS), gender identity disorder, and economic distress.  Id.  Still, doctors noted that during her treatment, Plaintiff had demonstrated moderate improvement.  Id.

After submitting these records, Plaintiff subsequently returned to RBMHC on February 25,

2004, where she admitted to a past history of drug and alcohol use, but denied any current use.  Id.
Plaintiff indicated that she was taking Prevacid 30 mg, Bentyl 10 mg, and Tylenol PM.  Id.  Upon
her discharge, Plaintiff was given a prescription for Ativan and told to return on April 9, 2004.  Id.
at 24.

During her 2004 periodic treatment at RBMHC, Plaintiff was twice rushed to Raritan Bay
Medical Center for emergency treatment after she was found intoxicated while lying in the street.
Id.  After the first such instance, on March 28, 2004, Plaintiff was treated for acute alcohol
intoxication.  Id.  Although initially uncooperative with the medical staff, forcing them to place her
in restraints, Plaintiff eventually allowed doctors to complete an examination.  Id.  Plaintiff stated
she had no medical history, but was taking Dicyclomine, an antibiotic.  Id.  She was discharged and
referred to Alcoholics Anonymous.  Id.  Plaintiff's second incident occurred on April 12, 2004.  Id.
The staff was again forced to restrain her.  Plaintiff later admitted to doctors that she had an alcohol
dependency.  Id.  She was ultimately discharged and again referred to an addiction treatment
program.  Id.

Further records from 2004 indicate that Plaintiff had several appointments at RBMHC with
her clinical psychologist, Robert E. Golski, and her treating psychiatrist, Dr. Greenwald.  Id. at
24–25.  During this time, Plaintiff was placed on Xanax XR 2 mg, Lamictal 25 mg, Zoloft 50 mg,
Risperdal 1 mg, and Ativan.  Id. at 24.  Dr. Greenwald also indicated that Plaintiff was diagnosed
with Bipolar disorder; he described her most recent incident as mixed, moderate with a fair
prognosis.  Id.

In addition to her visits to RBMHC, Plaintiff sought treatment beginning January 2, 2003,
for back pain, allergic rhinitis, headaches, epigastric pain, bloating, diarrhea, intravenous drug use

on methadone maintenance, and smoking cessation at the RBMHC- Joseph S. Yewaisis Outpatient Center.  Id. at 10.  Plaintiff was initially prescribed Claritan 10 mg and Relafen 500 mg, and was referred to a physical therapy program.  Id.  Later, doctors provided Plaintiff with Elavil 25 mg, Immodium and Bentyl.  Id.  Doctors noted that Plaintiff was capable of working and further advised she find a job to help her keep active and to combat stress.  Id.

Plaintiff's records also indicate that from January 2004 through May 2004, Plaintiff was treated for allergies, hepatitis C, bipolar disorder, irritable bowel syndrome and migraine headaches. Id. at 25–26.  She was placed on Allegra D and Flonase nasal spray for allergic rhinitis/sinusitis, as well as Pevacid for epigastric pain and Xanax for anxiety.  Id. at 26.  Plaintiff was not receiving any treatment for her hepatitis during this time.  Id.

Upon reconsideration of Plaintiff's request for social security benefits, DDS sent Plaintiff for two consultative exams.  Id.  Dr. Merlin completed the first such exam on November 11, 2004, where she reported that Plaintiff's physical examination was within normal limits.  Id.  Plaintiff indicated she drank occasionally.  Id.  The doctor diagnosed Plaintiff with depression, anxiety and Hepatitis C, but indicated there was no evidence of cirrhosis.  Id.  She further said that Plaintiff was able to sit, stand, walk, lift, carry, handle objects, hear, speak and travel.  Id.  Dr. Baharlias completed Plaintiff's second DDS exam on November 21, 2004.  Id.  He determined that Plaintiff did not seem to have any obvious cognitive problems other than difficulty concentrating.  Id. Plaintiff stated that she continued to drink alcohol once or twice week, but claimed she had stopped using cocaine and heroin several years ago.  Id.

In light of the foregoing record, Dr. L. Farrell, a State Agency doctor, upheld the prior ruling, finding that Plaintiff was ineligible for Title II benefits while she was insured from November 11,

2001 to September 30, 2003.  Id. at 27.  Dr. Farrell found, though, that in regards to the Title XVI claim (from September 30, 2003 to March 15, 2006, when Plaintiff was uninsured), the Plaintiff had a severe psychiatric impairment.  Id.  The doctor, however, concluded that the Plaintiff's ailment did not preclude her from performing the "basic mental demands of competitive, remunerative, unskilled work on a sustained basis."  Id.

In his review of the case, ALJ O'Leary, noting Social Security Ruling 96-6p, afforded these medical opinions significant weight, even though Dr. Farrell was a non-examining physician.  Id. at 27-28.

### 3. *Plaintiff Ruiz's Testimony*

At the ALJ hearing on May 15, 2006, Plaintiff testified she previously worked for Prudential Insurance as a telemarketer in 1996-1997 and most recently (in 2000 or 2001) worked for the Census Bureau.  Id. at 381.  Plaintiff stated that she was unable to work currently due to memory and concentration issues, as well as undesirable side effects of her Hepatitis C medication, including weakness and nausea.  Id.  Plaintiff said she treated the Hepatitis C with weekly self-administrated injections of interferon that she had begun two months prior and Ribavarin (sp).  Id. at 391-93, 397.  According to Plaintiff, the interferon injections made her nauseous and dizzy, particularly during the three days following an injection.  Id. at 392.

Plaintiff further testified she was seeing a therapist and psychotherapist as many as five times a month to treat her bipolar disorder, for which doctors proscribed Seroquel and Alprazolam (sp).  Id. at 384, 395.  She said she had recently been to RBMHC for treatment for panic attacks, which had caused her to black out.  Id. at 386-387.  She added she had back and pelvis pain, insomnia (for which she was proscribed Sonata), depression and migraines.  Id. at 397, 411.  Plaintiff testified that

her back and pelvic pain resulted from a car accident,  wherein she was struck by a drunk driver.  Id. at 398-400.

In her testimony, Plaintiff also maintained that she stopped drinking in 2003 at the advice of her doctor.  Id. at 387-388.  In her later testimony, though, Plaintiff seemed to indicate that even after 2003, she drank "on and off."  Id. at 403.  She added that she had stopped using heroin around May 5, 2005, and was currently completing methadone maintenance treatment.  Id.

Plaintiff further cited issues stemming from her transgender status, which doctors had classified as gender identification disorder. Id. at 403, 406.  She testified she was depressed by her inability to afford reassignment sexual surgery, which would allow her to change from a male to a female.  Id. at 403.  She stated she started receiving female hormonal medication around age eleven or twelve.  Id. at 412.

### 4.  *Medical Evidence*

The ALJ also considered medical evidence during and after the Plaintiff's hearing, from Dr. Martin Fechner and Dr. Jack Baharlias.

At the ALJ hearing, Dr. Fechner, a board-certified internist, testified that Plaintiff has Hepatitis C.  Id. at 29.  He stated that she takes Pegatron and an anti-viral medication, but noted that tests for her viral load were positive.  Id. at 28–29.  Dr. Fechner also testified that, as of February 2004, Plaintiff's liver enzymes were almost normal and her liver was not damaged.  Id. at 29.  He indicated that Pegatron would leave Plaintiff tired and nauseated for several days.  Id.  He also noted that although Plaintiff testified she stopped drinking three years ago, the record showed that she did not stop until April 2004.  Id.

Following the ALJ hearing, on February 27, 2007, ALJ O'Leary sent Plaintiff to complete

an examination with Dr. Baharlias, with whom Plaintiff had met on November 21, 2004. Id. at 26, 29. Dr. Baharlias stated that Plaintiff "had a very different presentation" than she did when they had first met, as she had no memory of her prior visit and was agitated. Id. at 29. Plaintiff told Dr. Baharlias that she had recently suffered from seizures and moreover indicated that she had been recently drinking. Id. She complained of sleeping issues, Hepatitis C, panic attacks, and seizures. Id. She said she was currently taking Lithium, Seroquel, Delestrogen injections, Spironolactone, and Lopermide. Id.

Dr. Baharlias completed a mental examination of Plaintiff during her February 27, 2007 visit. Id. The exam showed that Plaintiff's mental state was not as sharp as it was on November 21, 2004. Id. Specifically, the doctor cited cognitive and memory problems that did not exist during Plaintiff's first visit. Id. Dr. Baharlias ultimately diagnosed Plaintiff with schizoaffective disorder presentation, bipolar type (current episode, hypomanic), and personality disorder (with borderline or histrionic features). Id. In his Medical Source Statement, the doctor stated that Plaintiff was both "markedly impaired in her abilities to understand, remember, and carry out even short, simple instruction as well as detailed instructions" and "markedly impaired in her abilities to interact appropriately with supervisors, respond appropriately to work pressures or changes in a routine work setting." Id.

## II. STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla . . . but may be less than a

preponderance." <u>Woody v. Sec'y of Health & Human Servs</u>, 859 F.2d 1156, 1159 (3d Cir. 1988). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988) (citation omitted).  Not all evidence is considered "substantial."   For instance,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.   Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g. that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion.

<u>Wallace v. Sec'y of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting <u>Kent v. Schweiker</u>, 710 F.2d 110, 114 (3d Cir. 1983)).  The ALJ must make specific findings of fact to support his ultimate conclusions. <u>Stewart v. Secretary of HEW</u>, 714 F.2d 287, 290 (3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." <u>Jones v. Barnhart</u>, 364 F.3d 501, 503 (3d Cir. 2004).  As such, it does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. <u>Monsour Med. Ctr. V. Heckler</u>, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)).   "The district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing <u>Early v. Heckler</u>, 743 F.2d 1002, 1007 (3d Cir. 1984)).  A Court must nevertheless "review the evidence in its totality." <u>Schonewolf v. Callahan</u>, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing <u>Daring v. Heckler</u>, 727 F.2d 64, 70 (3d Cir. 1984).  In doing so, the Court "must 'take into account whatever in the record fairly detracts from its weight.'" <u>Id.</u> (quoting <u>Willibanks v. Sec'y of Health</u>

& Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).

To properly review the findings of the ALJ, the court needs access to the ALJ's reasoning. Accordingly,

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)).  A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence."  Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  If the ALJ fails to properly indicate why evidence was rejected, the court is not permitted to determine whether the evidence was discredited or simply ignored.  See Burnett v. Comm'r of Soc. Sec, 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

## III.  APPLICABLE LAW

### A.  THE FIVE-STEP PROCESS

Plaintiff here seeks DIB for the time she was insured, November 11, 2001, until September 30, 2003.  See 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. §§ 404.130, 404.315(a).  Plaintiff additionally seeks SSI from September 30, 2003 until March 14, 2006, the period she was uninsured. See 42 U.S.C. §§ 1382a and 1382b.  Despite the distinction in benefit types, the underlying inquiry concerning whether Ruiz was disabled pursuant to the Social Security Act (Act) governs both time lines.

-11-

A claimant is considered disabled under the Act if he or she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). A claimant bears the burden of establishing his or her disability. Id. § 423(d)(5).

To make a disability determination, the Commissioner follows a five-step process pursuant to 20 C.F.R. § 404.1520. Under the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit. 20 C.F.R. § 404.1520. If the claimant establishes that she is not currently engaged in such activity, the Commissioner then determines whether, under step two, the claimant suffers from a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). The severe impairment or combination of impairments must "significantly limit[] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The impairment or combination of impairments "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. If the Commissioner finds a severe impairment or combination of impairments, he then proceeds to step 3, where he must determine whether the claimant's impairment(s) is equal to or exceeds one of those included in the Listing of Impairments in Appendix 1 of the regulations ("Listings"). 20 C.F.R. § 404.1520(d). Upon such a finding, the claimant is presumed to be disabled and is automatically entitled to benefits. Id. If, however, the claimant does not meet this burden, the Commissioner moves to the final two steps.

-12-

Step four requires the Commissioner to determine whether the claimant's residual functional capacity sufficiently allows her to resume her previous work. 20 C.F.R. § 404.1520(e). If the claimant can return to her previous work, then she is not disabled and therefore cannot obtain benefits. Id. If, however, the Commissioner determines that the claimant is unable to return to her prior work, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner, who must find that the Claimant can perform other work consistent with her medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. § 404.1520(g). Should the Commissioner fail to meet this burden, the claimant is entitled to social security benefits. 20 C.F.R. § 404.1520(a)(4)(v).

In applying the five-step evaluation, the ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis." Rivera v. Commissioner, 164 F. App'x 260, 262 (3d Cir. 2006) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). All that is required is that, reading the ALJ's decision in its entirety, there is "sufficient development of the record and [an] explanation of findings." Id.

### B. ALCOHOL/DRUG USE AND FAILURE TO FOLLOW PRESCRIBED TREATMENT

Even if an ALJ determines that a individual is disabled, the ALJ can still preclude an individual from obtaining benefits under two circumstances applicable to the instant case. First, pursuant to 20 C.F.R. § 416.930,

> An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow a prescribed treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot by virtue of such 'failure' be found to be under a disability.

SSR No. 82-59, 1982 SSR LEXIS 25. However, the code describes several instances in which an

individual would still be deemed disabled, even if he or she does fail to follow the prescribed treatment.   These include:  (1) religious reasons; (2) a situation where a doctor prescribes "cataract surgery for one eye when there is an impairment of the other eye resulting in a severe loss of vision [that] is not subject to improvement through treatment"; (3) a situation where unsuccessful surgery was performed and the same surgery is recommended again for the same impairment; (4) a situation where surgery is risky; and (5) a situation where the treatment involves "amputation of an extremity, or a major part of an extremity."  20 C.F.R. § 416.930(c)(1)-(5).

Second, under 42 U.S.C. § 423(d)(2)(C), a person "shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  To determine whether alcoholism or drug addiction is a contributing material factor, the ALJ must assess whether he "would still find [the claimant] disabled if [the claimant] stopped using drugs or alcohol."  20 C.F.R. § 416.935(b)(1).  The ALJ is specifically required to "evaluate which . . . current physical or mental limitations . . . would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling."  20 C.F.R. § 416.935(b)(2).  "If [the ALJ] determine[s] that [the claimant's] remaining limitations would not be disabling, [the ALJ] will find that [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. § 416.935(b)(2)(I).

**IV.  ANALYSIS**

On appeal, Plaintiff argues that the Commissioner erred in denying her benefits for two reasons.  First, she asserts that the Commissioner's decision denying the existence of a disability is not supported by substantial evidence in the record.  Pl. Brief, at 15.  Second, she argues that the

Commissioner did not carry his burden of proof that the Plaintiff's substance abuse was a material element in her disability. Id. at 27. For the reasons set forth below, the decision of the Commissioner will be remanded for analysis consistent with this Opinion.

To assess whether a claimant has established a disability, an ALJ must analyze his or her claims pursuant to the five-step process provided for in the Social Security Act. 20 C.F.R. § 404.1520. Under the regulations, if a plaintiff satisfies her initial burdens at steps one and two, she must then provide evidence that her impairment is equal to or exceeds one of the disabilities in the Listing of Impairments in Appendix I of the regulations. 20 C.F.R. § 404.1520(d).

In this case, the ALJ concluded his disability analysis at step two of the regulations. Tr. 19. In his ruling, the ALJ first found that a combination of the Plaintiff's impairments, including Hepatitis C, low back pain, allergies, depression due to transgender issues, and polysubstance abuse, "did not cause more than a minimal impact on the claimant's ability to perform basic work activities for more than 12 months." Id.[2] That is, it appears that the ALJ determined that Plaintiff did not proceed past the second step, and was not disabled prior to March 15, 2006. The ALJ's decision, however, is not clear on this point.

In subsequent analysis, however, the ALJ stated that "while it appears facially the claimant is 'disabled' on the basis of her alleged mental impairments . . .there is pervasive medical evidence of alcoholism and drug abuse which is clearly material to a determination of 'disability.'" Id. at 31. This statement—in contrast to his assertion that Plaintiff's impairments were minimal—indicates

---

[2] In the record, Dr. L. Farrell made reference to Medical Listings 12.06 and 12.08. Tr. at 27. Although the ALJ afforded Dr. Farrell's opinion significant weight, id. at 28., it is unclear whether the ALJ was attempting to substitute Dr. Farrell's diagnosis for an explicit finding at step three. Even assuming it did, a mere passing reference to step three is not sufficient to satisfy the ALJ's analysis. See Rivera v. Commissioner, 164 Fed. Appx. 260, 263 (3d Cir. 2006).

that the ALJ **did** find a disability (i.e., at Step 3), and determined that benefits should nonetheless be denied in light of Plaintiff's failure to adhere to a proposed treatment plan.  The ALJ's two findings, then, are inconsistent.

Before determining whether a claimant's failed to follow prescribed treatment, an ALJ is required to find that the plaintiff suffered from a disabling impairment.  See Vega v. Commissioner, No. 09-2340, 2009 U.S. App. LEXIS 28331, at *5-6 (3d Cir. Dec. 23, 2009) ("It is . . . true that a denial of benefits for failure to follow a prescribed treatment plan may only be issued after the ALJ finds a disabling impairment that precludes engaging in any substantial activity."); SSR 82-59, 1982 SSR LEXIS 25 (finding that the policy and criteria underlying the failure to follow prescribed treatment only apply to "[a]n individual who would otherwise be found to be under a disability"); 20 C.F.R. § 416.935(a) ("**If we find that you are disabled** and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.").[3]  Accordingly, it is not clear why the ALJ would have conducted any discussion about the Plaintiff's alleged failure to follow her treatment plan.  Put simply, in this case, the ALJ must have found that Plaintiff suffered from a disability before analyzing whether alcohol or drugs materially affected such disability—to determine whether a claimant would **still** be disabled, the ALJ must have impliedly found the

_____

[3] Plaintiff has argued that the burden rests with the Commissioner to establish that alcohol materially affects a disability (and thus precludes a disability finding).  This question was rendered moot by the ALJ's failure to find a disability.  Nevertheless, as the Government points out, although the Third Circuit has not addressed the issue, other rulings within this Circuit place the burden on a plaintiff to show that she would have been disabled even without the effects of substance abuse.  See, e.g., Reed v. Barnehart, No. 07-5099, 2008 WL 2835331, at *8 (D.N.J. July 18, 2008); Thomas v. Astrue, No. 08-632, 2008 WL 4589751, at *2 (E.D. Pa. Oct. 15, 2008).

-16-

claimant disabled in the first instance.  See In re Sedlak, No. 06-3663, 2008 U.S. Dist. LEXIS 32864

(D.N.J. 2008).

The ALJ's failure to complete step three of the disability analysis or clearly articulate any

disability finding precluded him from conducting any subsequent analysis regarding the Plaintiff's

alcoholism or drug use.  On remand, if the ALJ does in fact proceed to step three of the analysis, the

ALJ should clearly identify the Plaintiff's disability (or disabilities) pursuant to the regulations.  See

20 C.F.R. § 404.1520(d).[4]  At such time, the ALJ can properly assess whether drugs or alcohol or

a failure to follow treatment procedures affected the Plaintiff's disability.  The record will then be

clear as to whether the ALJ's decision concluded at step two or three of the five-step analysis.

## VII.  CONCLUSION

For the reasons stated, this matter is remanded for further proceedings consistent with this

Opinion.

                                S/ Dennnis M. Cavanaugh
                                Dennis M. Cavanaugh, U.S.D.J.

Date:                March   23  , 2010
Original:         Clerk's Office
cc:               All Counsel of Record
                    File

[4]The ALJ's step three analysis requires more than a mere reference to the step.  "We require an ALJ to 'fully develop the record and explain his findings at step three, including an analysis of whether and why [each of the claimant's] impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments.'" Rivera v. Commissioner, 164 Fed. Appx. 260, 263 (3d Cir. 2006) (quoting Fargnoli v. Halter, 247 F.3d 34, 28 (3d Cir. 2001)).  As such, "[i]t is not enough for the ALJ to conclude that no medical evidence meets or equals any of the listings, in the absence of any discussion of why the specific evidence provided by the claimant was not equivalent." Id.